IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:    C. R. BARD, INC.,
          PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION

                                                      MDL No. 2187

THIS DOCUMENT RELATES TO CIVIL ACTION NUMBERS:

| | |
|---|---|
| Cisson, et al. v. C. R. Bard, Inc. | 2:11-cv-00195 |
| Queen, et al. v. C. R. Bard, Inc. | 2:11-cv-00012 |
| Rizzo, et al. v. C. R. Bard, Inc. | 2:10-cv-01224 |
| Jones v. C. R. Bard, Inc. | 2:11-cv-00114 |

**MEMORANDUM OPINION AND ORDER**
(Plaintiffs' Motion for Reconsideration)

Pending before the court is the Plaintiffs' Motion for Reconsideration of Order Granting Defendant's Motion to Strike Plaintiffs' Expert Donald Ostergard, M.D., and of Order Granting Defendant's Motion to Exclude Certain Testimony from Plaintiffs' Experts Ahmed El-Ghannam, Ph.D. and Bernd Klosterhalfen, M.D. [Docket 276].[1] Defendant C. R. Bard, Inc. ("Bard") has filed a response, and the motion is ripe for review. The plaintiff's motions for reconsideration are **GRANTED in part** as to Dr. El-Ghannam and Dr. Klosterhalfen, and **DENIED in part** as to Dr. Ostergard. I have reconsidered my rulings on Dr. El-Ghannam and Dr. Klosterhalfen's expert opinions and rule as discussed below.

---

[1] Docket numbers cited herein refer to the documents in the *Cisson* case. Identical motions are also pending in *Queen* [Docket 281], *Rizzo* [Docket 309], and *Jones* [Docket 291], and this Memorandum Opinion and Order applies to those cases as well.

**I.     Background**

On June 4, 2013, I entered a Memorandum Opinion and Order in all four bellwether cases, which ruled on the parties' *Daubert* motions and excluded Dr. El-Ghannam's expert opinions on the issue of specific causation and Dr. Klosterhalfen's expert opinions on the issue of surface degradation. (*See* Mem. Op. & Order [Docket 274], at 36-37, 55). I also entered a Memorandum Opinion and Order granting, in relevant part, Bard's motion to strike Dr. Ostergard's expert report. (*See* Mem. Op. & Order [Docket 271], at 5-6). The plaintiffs now ask me to reconsider these rulings under Federal Rule of Civil Procedure 54(b) "in the interests of justice." (Pls.' Mot. for Reconsideration [Docket 276], at 3).

**II.    Legal Standard**

The plaintiff brings this motion under Federal Rule of Civil Procedure 54(b), which governs reconsideration here. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469-70 (4th Cir. 1991) (finding district court properly reconsidered an interlocutory order under Rule 54(b)); *In re Digitek Prods. Liab. Litig.*, MDL No. 1968, 2010 WL 5396377, at *1 n.2 (S.D. W. Va. Oct. 20, 2010); *Bragg v. Robertson*, 183 F.R.D. 494, 495-96 (S.D. W. Va. 1998) (stating that "the Court retains power to amend interlocutory orders to achieve complete justice"). Rule 54(b) states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). "Notwithstanding that precept, it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—

rightly or wrongly." *Mt. Hawley Ins. Co. v. Felman Production, Inc.*, No. 3:09-cv-00481, 2010 WL 1404107, at *2 (S.D. W. Va. Mar. 30, 2010).

Additionally, although a "motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion," this district has been "guided by the general principles of Rules 59(e) and 60(b)" in determining whether a Rule 54(b) motion should be granted. *Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998). The Fourth Circuit has recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Such motions "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* Finally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)).

**III.     Discussion**

These cases are four of now more than twenty thousand assigned to me involving the use of transvaginal surgical mesh. Finality in my rulings is an exceedingly important aspect of these cases, and as discussed above, reconsideration is an "extraordinary remedy" to be used sparingly. *Pac. Ins. Co.*, 148 F.3d at 403. In this very limited circumstance, where I am ruling on motions for the first four bellwether trials in these MDLs, I will use this extraordinary remedy to ensure that my rulings reach a correct result in order to prevent manifest injustice.

**A.** *Dr. Ostergard*

In my Memorandum Opinion and Order granting Bard's motion to strike Dr. Ostergard's Rule 26 report, I ruled that Dr. Ostergard "renders the same opinions already offered by the plaintiffs' initial experts" and does "not actually rebut any opinions of Bard's experts." (Mem. Op. & Order [Docket 271], at 5-6).

Plaintiff Jones now argues that "[n]one of Plaintiffs' initial experts addressed (or could have addressed)" her rectal prolapse because it was "not diagnosed or treated until well after Plaintiffs' expert report deadline." (Pls.' Mot. for Reconsideration [Docket 276], at 3-4). The plaintiff's initial expert reports were due on October 15, 2012. The plaintiff was diagnosed with rectal prolapse on February 18, 2013 and underwent surgery to address this condition on March 9, 2013. The plaintiff served Dr. Ostergard's report on April 22, 2013 pursuant to the deadline for *rebuttal* expert reports. The plaintiff asks the court to allow Dr. Ostergard's testimony on this issue contained in his rebuttal expert report, or alternatively to withdraw her case from the group one trial pool.

First, the testimony the plaintiff seeks to introduce is not rebuttal expert opinion, a fact that the plaintiff never addresses. Second, a motion to reconsider is not the proper method of obtaining the relief that the plaintiff seeks. The plaintiff could have, within the parameters of Rules 26 and 37, filed a supplemental expert report for one of the plaintiff's existing experts, or sought leave to allow Dr. Ostergard to testify as an initial expert. The plaintiff did neither in a timely manner and instead now seeks the admission of this testimony through a motion to reconsider my ruling on a motion to strike. Finally, the plaintiff's alternative request to withdraw Ms. Jones's case from this trial pool is more properly the subject of its own, separate motion, not

within a motion to reconsider my ruling on a motion to strike. Accordingly, the plaintiff's motion for reconsideration of Dr. Ostergard's expert opinions is **DENIED**.

### B. *Dr. El-Ghannam*

In my Memorandum Opinion and Order on the parties' *Daubert* motions, I ruled that as to specific causation, nothing in Dr. El-Ghannam's expert report "suggests that he is offering an opinion that any of the particular bellwether plaintiffs was injured by the Avaulta mesh that was implanted in them." (Mem. Op. & Order [Docket 274], at 55). Instead, "it seems like Dr. El-Ghannam opines that the degradation of polypropylene is one of the causes for the product's failure inside the body generally." (*Id.*). As a result, I found that Dr. El-Ghannam did not offer any expert opinions as to specific causation.

In seeking reconsideration, the plaintiffs point to Dr. El-Ghannam's expert report as well as deposition testimony. Dr. El-Ghannam's expert report discusses degradation of mesh and the effects of such degradation. (El-Ghannam Report [Docket 130-1], at 3-4, 6-7). Dr. El-Ghannam notes that "[t]he explants of Donna Cisson, Carolyn Jones and Wanda Queen . . . specifically show swelling of the fibers that leads to changes in the width of the fibers." (*Id.* at 4). And during deposition, Dr. El-Ghannam testified at length that (1) he reviewed explants of Ms. Cisson, Ms. Queen, and Ms. Jones; (2) these explants he reviewed all showed degradation; (3) the degradation of the mesh in each of these bellwether plaintiffs would have inflammatory effects on their systems and tissues. (*See* El-Ghannam Dep. vol. II [Docket 130-3], at 539:15-543:23).

Upon reconsideration, I will clarify my ruling on Dr. El-Ghannam's opinions on the issue of specific causation. In sum, I **FIND** that Dr. El-Ghannam may provide these opinions regarding degradation, the resulting inflammatory response, and the degradation that he examined in the bellwether plaintiffs' explants. However, Dr. El-Ghannam did not actually

5

observe an inflammatory response in the bellwether plaintiffs. He testified only that the bellwether plaintiffs *would have* inflammatory effects and not that they *actually did*. Accordingly, his opinions are limited to the opinions offered in his report and deposition.

### C. *Dr. Klosterhalfen*

In my Memorandum Opinion and Order on the parties' *Daubert* motions, I ruled that Dr. Klosterhalfen's surface degradation opinions were not applied "to the facts of the case as required by Rule 702." (Mem. Op. & Order [Docket 274], at 37) (internal quotation marks omitted). I reasoned that Dr. Klosterhalfen did not see any evidence of surface degradation on the explants of the bellwether plaintiffs in his methodology for reviewing pathology.

In seeking reconsideration, the plaintiffs clarify that Dr. Klosterhalfen does not observe degradation from his *pathology slides* but based his degradation opinions on (1) scientific literature; (2) his experience; and (3) his review of Dr. El-Ghannam's SEMs—which include explants of Cisson and Queen. Accordingly, the plaintiffs seek a ruling allowing Dr. Klosterhalfen to offer opinions on the surface degradation of polypropylene.

Dr. Klosterhalfen's expert report and deposition testimony are somewhat confusing. His report states:

> I have observed polypropylene degradation images from scanning electron microscopy of vaginal mesh explants. As well, I have observed SEMs of pristine Avaulta Solo, Avaulta Biosynthetic and Avaulta Plus. I have also reviewed immersion SEMs of pristine Avaulta Solo, Avaulta Biosynthetic and Avaulta Plus which have been provided to me in this litigation. . . . I have also observed polypropylene degradation in some of the 500 excised vaginal meshes presented to me in practice and, as well as in Bard meshes excised from women and furnished to me in this litigation.

(Klosterhalfen Report [Docket 108-1], at 4). During his deposition, Dr. Klosterhalfen testified:

> Q.  What effect – strike that. Do these [SEMs] affect or inform your opinions in this case at all?

    A.    No.

(Klosterhalfen Dep. vol. I [Docket 108-2], at 284:17-284:20). When it was clarified that counsel was asking about the entire set of SEMs, he testified:

    A.    That's – that what we know, what's pretty similar to our studies if we do it with the pristine meshes and if we look at the meshes implanted for several months, so we have similar results, basically.

(*Id.* at 285:1-285:7). He later testified:

    Q.    And with respect to the opinions you have in this case, do these [SEM] photographs inform any of them?

    A.    No.

(Klosterhalfen Dep. vol. II [Docket 108-4], at 569:3-569:6). Upon reconsideration, I **FIND** that Dr. Klosterhalfen relies on sufficient and reliable bases for his opinion that degradation occurs in polypropylene and the effects of such degradation *generally*, and such opinions should not be excluded. However, there still does not appear to be anything linking his surface degradation opinions to the bellwether plaintiffs specifically, and therefore his opinions are limited to degradation of polypropylene and effects of such degradation generally.

**IV.   Conclusion**

For the reasons discussed above, it is **ORDERED** that the plaintiff's motions for reconsideration in each of the bellwether cases (*Cisson*, 2:11-cv-00195 [Docket 276], *Queen*, 2:11-cv-00012 [Docket 281], *Rizzo*, 2:10-cv-01224 [Docket 309], and *Jones*, 2:11-cv-00114 [Docket 291]) are **GRANTED in part** as to Dr. El-Ghannam and Dr. Klosterhalfen, and **DENIED in part** as to Dr. Ostergard.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 14, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE